# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENNIE CUNNINGHAM, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-CV-619-SMY-RJD |
| BENJAMIN LEWIS, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendants Daniel Korte, Benjamin Lewis, Jason Zollars and Trent Ralston's motion for summary judgment (Doc. 45). Plaintiff Bennie Cunningham was formerly an inmate in the custody of the Illinois Department of Corrections at Lawrence Correctional Center. Defendants are employed by the Illinois Department of Corrections. Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights (Doc. 1). Following threshold screening by the Court, Plaintiff has proceeded against Defendants on an Eighth Amendment excessive force claim. For the following reasons, Defendants' motion is **GRANTED in part and DENIED in part**.

## FACTS

The following facts are taken from Plaintiff's deposition (Doc. 46-1) unless otherwise indicated. Cunningham was incarcerated at Lawrenceville Correctional Center ("Lawrenceville") from August 2012 to February 2016. (Doc. 46-1 at 17-18.) Defendants were employed with the Illinois Department of Corrections ("IDOC"). On July 10, 2014, IDOC conducted an institutional search at Lawrence. (*Id.*) During the institutional search, correctional officers placed inmates in handcuffs with their hands behind their back, escorted them to the

dining hall and ordered them to sit and to put their heads down on the tables. (*Id.* at 19-20, 22-24.)

When Cunningham arrived in the dining hall, he sat down, lowered his head and faced the tabletop, but could not rest his head on the table due to his age and lack of flexibility. (*Id.* at 27; Doc. 58-1 at 1.) Defendant Korte then ordered Cunningham to put his head down. (Doc. 46-1 at 29.) Cunningham responded that his head was down. (*Id.*) Korte again ordered him to put his head down. (*Id.*) Korte pushed Cunningham's head onto the table and Cunningham pushed his head back to prevent Korte from injuring him. (*Id.* at 30.) Korte attempted to push Cunningham's head to the table three or four times. (*Id.*)

Defendants Lewis, Ralston and Zollars subsequently came to the table and assisted Korte by escorting Cunningham to another dining area. (*Id.* at 32-35.) Defendants pushed Cunningham to the ground near the wall of the dining area and Defendant Lewis kneed him in the ribs three or four times. (*Id.* at 35, 38.)

Lewis, Ralston and Zollars escorted Cunningham from the dining area to the segregation unit, which took approximately two minutes. (*Id.* at 41; Doc. 46-3 at 13, 15.) Cunningham told them that the escort position caused him pain. (Doc. 46-1 at 48.) When Cunningham arrived in the segregation unit, Defendants pushed him into a shower, attached a lead chain to his handcuffs and closed the door. (Doc. 46-1 at 50, 54; Doc. 46-2 at 15-16.) Cunningham faced the door to speak to Defendants, but one of the defendants pulled the chain, which spun Cunningham and slammed his back into the shower door.[1] (*Id.* at 52-53.) Lewis, Ralston and Zollars pulled

---

[1] Plaintiff testified that Defendant Lewis pulled the chain, but Defendants Zollars and Lewis testified that Defendant

Cunningham's arms through the chuckhole door to remove the handcuffs. (*Id*. at 61.) Defendants did not issue orders to Cunningham or otherwise allow him the opportunity to cooperate with respect to the handcuff removal. (*Id.* at 55-56, 58.) As a result of Defendants' conduct, Cunningham sustained cuts necessitating stitches, bruises and swelling to his hands and forearms. He continues to suffer from numbness in his wrists. (Doc. 58-2 at 63-66.) Cunningham also sustained a bruise to his ribs. (*Id.* at 67.)

During his deposition, Defendant Korte testified that when escorting Cunningham, Defendants used the Escort 2 position, in which correctional officers lock arms with a handcuffed inmate and put pressure on the inmate's shoulders to keep the inmate bent at the waist. (Doc. 46-3 at 13-14; Doc. 46-4 at 16.) The purpose of the Escort 2 position is to remove an inmate's ability to attack. (Doc. 46-4 at 16.) Correctional officers use the position on aggressive inmates. (*Id.*)

Korte also testified that Cunningham did not comply with the order to put his head down, while the other three inmates at the table did comply. (Doc. 46-4 at 13.) Korte interpreted Cunningham's conduct as argumentative and aggressive. (*Id.* at 15.) He called for backup and escorted Cunningham to a different area in order to isolate him and de-escalate the situation. (*Id.* at 15, 18.)

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

---

Zollars pulled the chain. (Doc. 46-3 at 23-24; Doc. 46-5 at 17.)

movant is entitled to judgment as a matter of law." The Court must "examine the record and all reasonable inferences in the light most favorable to the non-moving party." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party." *Id.*

**Excessive Force**

To determine whether a prison official's use of force violates the Eighth Amendment, "the question … ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (CA2)). While the *de minimis* use of force, such as a slight push or shove, does not implicate the Eighth Amendment (see, *Hudson v. McMillian*, 503 U.S. 1, 10, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)), "pain, not injury, is the barometer by which we measure claims of excessive force[.]" *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009). In other words, the improper use of force may violate the Eighth Amendment even if it results in no lasting injuries. *Id.*

In determining whether a particular use of force is excessive in the prison context, courts consider several factors, "including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). "Unless it appears that the evidence, viewed in the light most favorable to

4

the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Id*. at 322.

Cunningham alleges that Korte applied excessive force by pushing his head to the table. The following relevant facts are undisputed: When Cunningham arrived in the dining hall, he sat down, lowered his head and faced the tabletop but did not rest his head on the table. Korte ordered Cunningham to put his head down and Cunningham responded that his head was down. Korte again ordered Cunningham to put his head down and pushed Cunningham's head onto the table. Cunningham then pushed his head back. Korte attempted to push Cunningham's head to the table three or four more times.

Although these facts are undisputed, the parties' interpretations of the incident differ significantly. From Cunningham's perspective, he complied with Korte's orders as he understood them and to the extent that his physical condition would allow. From Korte's perspective, he ordered Cunningham to place his head on the table and, although the other three inmates at the table complied, Cunningham did not. Korte perceived Cunningham's failure to comply as physical resistance to his orders.

"[T]he subjective motivations of the individual officers are of central importance in deciding whether force used against a convicted prisoner violates the Eighth Amendment." *Graham v. Connor*, 490 U.S. 386, 398 (1989). Here, nothing in the record suggests that Korte knew about Cunningham's physical limitations or that Cunningham was any less capable of complying with his orders than the other inmates at the table. Rather, it is clear that Korte perceived Cunningham's actions as refusal to comply with his order and applied force in order to

5

compel his compliance. Moreover, the record indicates that the amount of force Korte applied in pushing Cunningham's head down was proportional to his subjective interpretation of the events and caused no injury Cunningham. Even when viewed in the light most favorable to Cunningham, the *Whitley* factors weigh in favor of Korte and no reasonable jury could conclude that he applied force maliciously or sadistically for the purpose of causing harm.

Cunningham also claims that Defendants Lewis, Ralston and Zollars used excessive force when they escorted him from the dining area to the segregation unit. Defendants used the Escort 2 position, in which correctional officers lock arms with a handcuffed inmate and put pressure on the inmate's shoulders to keep the inmate bent at the waist. The purpose of the Escort 2 position is to remove an inmate's ability to attack. While being escorted to segregation, Cunningham informed Defendants that the escort position caused him pain.

There is no evidence suggesting that these defendants used the Escort 2 position for the purpose of inflicting pain to Cunningham. Korte called Lewis, Ralston and Zollars to escort Cunningham to the segregation unit when Cunningham failed to comply with his orders in the dining hall. They employed the Escort 2 position to neutralize Cunningham's ability to attack. Even if Defendants knew that the position was causing Cunningham pain, he was required to assume the position for a short period of time (approximately 2 minutes), and was released from the position upon their arrival at the shower. Again, these facts do not raise a material issue of fact for the jury's consideration.

Cunningham further alleges that Lewis applied excessive force when he Lewis kneed him in the ribs. The question is whether Lewis' actions constitute a de minimis use of physical force

as a matter of law. The Seventh Circuit has considered the issue of de minimis force on numerous occasions. For instance, in *Lunsford v. Bennet*, 17 F.3d 1574 (7th Cir. 1994), an inmate alleged an excessive force claim against officers who poured a bucket of water on the inmate's head and allowed the bucket to hit the inmate's head. The application of force caused headaches, but required no medical treatment. *Id.* at 1582. The Seventh Circuit found that the officers applied only de minimis force and that, while the officers acted unnecessarily, they did not act in a manner that offended "the conscience of mankind." *Id.* In *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000), an inmate asserted an excessive force claim against an officer who, without justification, shoved the inmate into a doorframe, which caused bruising but required no medical treatment. The Seventh Circuit found that the officer's conduct "qualifie[d] as the kind of de minimis use of force that does not constitute cruel and unusual punishment." *Id.* at 620.

By contrast, in *Thomas v. Stalter*, 20 F.3d 298 (7th Cir. 1994), an inmate alleged that an officer punched him in the mouth and told him to shut up after nine other officers had pinned the inmate. The force used caused pain and exacerbated the inmate's dental condition. *Id.* at 302. The Seventh Circuit found that the application of force constituted more than de minimis force and that the record contained sufficient evidence for a jury to find that the officer acted with the purpose of causing harm. *Id.*

According to Cunningham's testimony, Lewis kneed him in the ribs three or four times as Defendants moved him to a separate dining area, which resulted in bruises to his ribs. This describes the type of de minimis use of force more similar to the incidents in *Lunsford* and *DeWalt* than the incident in *Thomas* and does not rise to the level of a constitutional violation.

Cunningham also maintains that Defendants used excessive force when they removed his handcuffs in the shower. When Cunningham arrived in the segregation unit, Defendants pushed him into a shower, attached a chain to his handcuffs and closed the door. Cunningham testified that he faced the door to speak to Defendants, but a defendant pulled the chain, which spun him and slammed his back into the shower door. Lewis, Ralston and Zollars then pulled Cunningham's arms through the chuckhole door to remove the handcuffs. Cunningham sustained cuts, bruises and swelling to his hands and forearms. He received stitches and continues to suffer from numbness in his wrists.

Considering the amount of force suggested by Cunningham's testimony and the resulting injuries, a jury could find that pulling the lead chain on the handcuffs constitutes more than de minimis force. Although Defendants assert that pulling the lead chain was necessary to remove the handcuffs, Cunningham testified that Defendants did not issue any orders to him with respect to handcuff removal, which suggests that Defendants made no efforts to temper the severity of the force used. Further, considering that the officers had placed Cunningham in a shower behind a closed steel door, they could not have reasonably perceived Cunningham as a threat. Accordingly, Cunningham's claim of excessive force against Defendants Lewis and Zollars shall proceed to trial with respect to pulling the lead chain.

However, the record contains no evidence that Defendants applied more than de minimis force with respect to any other aspect of the handcuff removal. Cunningham's deposition testimony suggests that Defendants could have allowed him more time to comfortably lower his body as they pulled his hands through the chuckhole. (Doc. 58-2 at 58.) However, his testimony

8

describes no more than incidental force used to bring his hands to the door for the purpose of removing the handcuffs. (*Id.*; *see also* Doc. 58-4 at 24.)

Based on the foregoing, Defendants' Motion for Summary Judgment is DENIED with respect to Cunningham's claim that Defendants Lewis and Zollars applied excessive force by pulling the chain connected to his handcuffs. The motion is otherwise GRANTED as to Cunningham's excessive force claims.

**Qualified Immunity**

Defendants argue they are entitled to qualified immunity. In light of the Court's ruling above, it need only consider whether qualified immunity applies to Defendants Lewis and Zollars in pulling the lead chain.

Under the doctrine of qualified immunity, governmental officials are protected from civil liability when performing discretionary functions so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). In evaluating a claim of qualified immunity, courts engage in a two-step analysis. First, the Court considers whether the plaintiff's claim constitutes a violation of his constitutional rights. Then, the Court determines whether those rights were clearly established at the time the violation occurred. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of*

*Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The unlawfulness of a particular official's action must be apparent "in light of the pre-existing law." *Id.* A party may demonstrate that a right was clearly established by presenting a closely analogous case establishing the defendant's conduct was unconstitutional or by presenting evidence the defendant's conduct was so patently violative of a constitutional right that reasonable officials would know without guidance from a court. *See Hope*, 536 U.S. at 739–40.

Defendants argue that the evidence does not support a claim of excessive force because the alleged application of force was justified by Cunningham's conduct, even taking Cunningham's version of events as true. However, as the Court previously found, the record contains facts from which a jury could reasonably conclude that Cunningham's Eighth Amendment rights were violated − that more than de minimis force was used and that Cunningham, who was then locked in a shower behind a steel door, did not present a threat. Further, the unconstitutionality of the use of improper force in this context was clearly established and should have been known to these defendants. Thus, Defendants Lewis and Zollars are not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 45) is DENIED with respect to Plaintiff's claim that Defendants Benjamin Lewis and Jason Zollars applied excessive force by pulling the lead chain connected to Plaintiff's handcuffs but GRANTED in all other respects. The Clerk of Court shall enter judgment in favor of Defendants

Daniel Korte and Trent Ralston and against Plaintiff Bennie Cunningham at the close of the case. Cunningham's claim that Defendants Lewis and Zollars applied excessive force by pulling the lead chain connected to his handcuffs shall proceed to trial.

**SO ORDERED.**

**DATED: August 11, 2017**

**s/ *Staci M. Yandle*** 
**STACI M. YANDLE** 
**United States District Judge**
